

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00401-CR

Alberto **VERASTEGUI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 14,031CR
Honorable Robert Cadena, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:     Rebeca C. Martinez, Justice
             Irene Rios, Justice
             Beth Watkins, Justice

Delivered and Filed: July 24, 2019

AFFIRMED

A jury convicted appellant Alberto Verastegui of aggravated kidnapping, aggravated assault by threat, and aggravated assault. On appeal, Verastegui contends: (1) the evidence is legally insufficient to support his conviction for aggravated kidnapping; (2) his punishment for aggravated assault by threat is barred by double jeopardy; and (3) the trial court erred in refusing his request for a jury instruction on defense of a third party. We affirm the trial court's judgment.

## BACKGROUND

At trial, motel manager David Longo testified he approached Veronica Enriquez and Verastegui, who were staying at the motel, after an employee complained about Verastegui. Longo testified that when he confronted the couple, he believed they were under the influence of narcotics, and called police. When police arrived, Enriquez refused to grant them access to the room. Longo then asked the couple to leave the property, and they left in a truck. Longo stated he did not see them again until later that afternoon when an employee brought Enriquez to his office.

Longo testified that when he saw Enriquez in his office, she made a comment about his ten-year-old son. She then asked Longo to follow her outside his office so they could talk. They sat in a truck outside one of the motel rooms. Longo stated he sat on the passenger's side, and Enriquez sat in the middle of the bench seat. Almost immediately, Verastegui came out of one of the motel rooms and got in the truck. Enriquez then closed the passenger door. Longo testified that as Verastegui drove away from the motel, Enriquez restricted his movements, attempting to keep him in the truck. Longo said he felt threatened and tried to get out of the truck several times, but when he unlocked the door, Enriquez pushed the lock down. Longo testified he never wanted to leave the motel with Verastegui and Enriquez — people he did not know. When asked whether he willingly left with the couple because he was engaged in drug activity, Longo said no.

Longo stated that as they drove, he saw a gun in Enriquez's lap. He testified he reached for the gun, but Verastegui tried to grab his hand. Longo explained he threw the gun out the window, adding that during the struggle, the truck veered off the road, stopping near a fence line. Longo said he opened the door and fell out of the truck. Enriquez then grabbed him and held him down. Verastegui retrieved a beer bottle from the back of the truck, hit him on the side of the head with it, and choked him while Enriquez held him down. Longo testified he got free and ran to the

road for help, but no one stopped. He said Verastegui and Enriquez drove away, but when they noticed no one stopping to help him, they turned around and told him to get in the truck. He testified he refused until Enriquez said they would take his son. He stated that when they returned to the motel, Verastegui held a pocket knife and told him not to do anything. Longo said he ran into one of the motel rooms for help. As he did, he heard someone say, "Let's go to the lobby and get your son." However, when they saw a motel guest, they left.

The jury also heard testimony from motel employees and residents as well as police officers, who confirmed portions of Longo's testimony. Specifically, Detective Julian Ramos testified the scene on the highway indicated a vehicle had veered off the roadway and then veered back onto the roadway and across it. Detective Ramos also testified a gun found near the motel showed marks suggesting it had been thrown from a vehicle. The detective described the round in the chamber as live ammunition capable of being fired.

The jury found Verastegui guilty on all counts. The trial court sentenced him to forty-five years' confinement on each count. Verastegui appealed.

## ANALYSIS

### Legal Sufficiency

Verastegui first contends the evidence is legally insufficient to show he secreted or held Longo in a place where he was not likely to be found. Verastegui contends that because he and Enriquez (1) returned Longo to the motel, (2) did not leave him in a field, lock him in a trunk, or move him from place to place, and (3) were at all times on a public highway, they never held Longo in a place he was unlikely to be found. We disagree.

### Standard of Review

In conducting a legal sufficiency review, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the

essential elements of the offense beyond a reasonable doubt. *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016). Under this standard, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the jury resolved any apparent inconsistencies in testimony in order to render its verdict, and we defer to its resolution. *Cary*, 507 S.W.3d at 757. The jury can choose to believe some, all, or none of the testimony provided by any witness, and give different weight to different testimony if it so chooses. *Baez v. State*, 486 S.W.3d 592, 594 (Tex. App.—San Antonio 2016, pet. ref'd).

### *Applicable Law*

Here, Verastegui was charged las a primary actor and as a party to the offense. "Whether a person is charged as a primary actor or as a party to the offense, the underlying offense of aggravated kidnapping remains the same." *Hinojosa v. State*, 433 S.W.3d 742,752 (Tex. App.—San Antonio 2014, pet ref'd).

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. TEX. PENAL CODE ANN. § 20.03(a). "Abduct" means to restrain a person with the intent to prevent his liberation by, among other things, secreting or holding him in a place where he is not likely to be found. *Id.* § 20.01(2)(A). Secreting or holding another where he is unlikely to be found is part of the mens rea requirement of kidnapping, not the actus reus. *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). The State is not required to prove a defendant actually secreted or held the victim, only that the defendant restrained the victim with the intent to prevent liberation. *Id.* The offense is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by holding or secreting the victim in a place where he is unlikely to be found. *Id.* The defendant's intent can be inferred from his conduct,

remarks, and surrounding circumstances. *West v. State*, 406 S.W.3d 748, 759 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

To convict Verastegui under the law of parties, the jury had to determine that Verastegui was criminally responsible for the acts of another. TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* at § 7.02(a)(2).

### *Application*

Here, the evidence supports the jury's conclusion that Verastegui intended to take Longo to a place he was unlikely to be found. The evidence shows Enriquez and Verastegui, total strangers to Longo, drove Longo away from the motel. Longo testified he did not want to leave the motel with Verastegui and Enriquez. He stated he attempted to escape, but as Verastegui drove, Enriquez prevented him from exiting the vehicle, pushing down the door locks and displaying a gun. *See Laster*, 275 S.W.3d at 521.

The evidence also shows that as Verastegui drove away from the motel, Longo attempted to wrestle a gun away from Enriquez, and Verastegui tried to prevent it. When the truck veered off the roadway and Longo tried to get away, Verastegui helped Enriquez restrain Longo by striking Longo in the head with a beer bottle and choking him. And although Verastegui and Enriquez fled when Longo broke away from them, they returned, forcing Longo back into the truck by threatening to take his son. *See id.*

It is irrelevant that Longo initially voluntarily joined Enriquez in the truck, *see Megas v. State*, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding victim voluntarily joining defendant does not preclude conviction of kidnapping), and that he agreed to get back into the truck. *See Clark v. State*, 24 S.W.3d 473, 476 (Tex. App.—Texarkana 2000, no

pet.) (holding cooperation by kidnapping victim does not defeat finding that victim was kidnapped). Additionally, the decision to return Longo to the motel does not absolve Verastegui of the kidnapping charge. Rather, releasing the victim in a safe place — if proved by the defendant by a preponderance of the evidence — merely reduces the kidnapping offense from a first to a second degree felony. *See* TEX. PENAL CODE ANN. § 20.04(d).

Viewing the evidence in the light most favorable to the jury's verdict, the jury could have reasonably inferred, beyond a reasonable doubt, Verastegui intended to prevent Longo's liberation — as the actor or as a party — by secreting or holding him in a place he was unlikely to be found or assisting or otherwise aiding Enriquez in doing so. *See id.* § 20.01(2)(A); *West*, 406 S.W.3d at 759–60 (holding fact that abduction took place as appellant was driving down roadway and public beach with cars passing by did not negate appellant's intent to take victim to place she was not likely to be found).

### *Double Jeopardy*

Verastegui also contends his double jeopardy rights were violated because the judgment imposed multiple punishments upon him for the same offense — aggravated kidnapping and aggravated assault by threat. The State argues Verastegui failed to raise this complaint in the trial court, or alternatively, that his convictions of aggravated kidnapping and aggravated assault by threat did not violate double jeopardy.

### *Applicable Law*

As a general rule, a party must preserve a complaint for appellate review by making a timely and specific objection, motion, or request in the trial court. TEX. R. APP. P. 33.1. A defendant may raise a double jeopardy claim for the first time on appeal when: "(1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2)

enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

A multiple punishments double jeopardy violation occurs when the same conduct is punished under a greater and a lesser-included offense or under two distinct statutes when the Legislature intended the conduct to be punished only once. *Id.* When, as here, the offenses in question are in different statutory sections, we determine legislative intent by analyzing the elements of the offenses in question. *Id*.

The starting point of an "elements" analysis is the *Blockburger* test, which asks whether each of the offenses requires proof of an element that the other does not. *Id.*; *see Blockburger v. United States*, 284 U.S. 299, 304 (1932). In making this determination, we focus on the elements alleged in the charging instrument, not on the statutory definitions of the offenses. *Garfias*, 424 S.W.3d at 58–59.

A double jeopardy violation also occurs where two punishments are imposed for a single course of conduct if the Legislature intended to authorize only one. *Id.* To facilitate this analysis, we use the non-exclusive *Ervin* factors:

- Are the offenses in the same statutory section?

- Are the offenses phrased in the alternative?

- Are the offenses similarly named?

- Do the offenses have common punishment ranges?

- Do the offenses have a common focus?

- Does the common focus, if any, tend to indicate a single instance of conduct?

- Can the elements that differ between the two offenses be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*?

- Is there legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Id.* at 59, 61 (citing *Ex parte Ervin*, 991 S.W.3d 804, 814 (Tex. Crim. App. 1999)). Another factor often considered is the allowable unit of prosecution for the offenses in question. *Id.* at 59. The "focus" or "gravamen" of a penal provision should be regarded as the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred. *Id.*

### *Application*

1. *Blockburger* Analysis

Beginning with the *Blockburger* test, the indictment charged Verastegui with aggravated kidnapping as follows:

> On or about the 22nd day of JULY 2016 and before the presentment of this indictment, in said county and state, ALBERTO VERASTEGUI, defendant did then and there intentionally and knowingly abduct another person, to wit David Longo by restricting the movements of David Longo without his consent so as to interfere substantially with his liberty, by moving him from one place to another, with the intent to prevent his liberation, by secreting or holding him in a place where he was not likely to be found, and the defendant did then and there use or exhibit a deadly weapon, to wit a handgun, during the commission of the offense.

*See* TEX. PENAL CODE § 20.04(b). The indictment for aggravated assault by threat alleged:

> On or about the 22nd day of JULY 2016 and before the presentment of this indictment, in said county and state, ALBERTO VERASTEGUI, defendant did then and there intentionally and knowingly threaten David Longo with imminent bodily injury by holding a gun and the defendant did then and there use or exhibit a deadly weapon, to wit a gun, during the commission of said assault[.]

*See id.* §§ 22.01(a)(2), 22.02(a)(2).

The aggravated kidnapping charge as set out in the indictment required the State to prove Verastegui abducted Longo by restricting his movements, moving him from one place to another, and by secreting or holding him. To prove aggravated assault by threat, however, the State had to prove Verastegui threatened the victim with imminent bodily injury. A comparison of the offenses charged in the indictment establishes the same facts are not required to prove both offenses; each

contains an element the other does not. *See Garfias*, 424 S.W.3d at 58–59. Accordingly, we hold there is no double jeopardy violation apparent on the face of the record pursuant to the *Blockburger* test.

Relying on *Girdy v. State*, 213 S.W.3d 315 (Tex. Crim. App. 2006), Verastegui contends aggravated assault by threat is a lesser-included offense of aggravated kidnapping because the same facts were required to establish both offenses. *Girdy*, however, is distinguishable because of how the State charged the offenses. In *Girdy*, the indictment alleged the defendant committed aggravated kidnapping when he abducted the victim "by using and threatening to use deadly force on the said [victim], and with intent to inflict bodily injury on her[.]" *Id.* at 316. The indictment further alleged the defendant committed aggravated assault by "threaten[ing] [the victim] with imminent bodily injury and did then and there use a deadly weapon . . . ." *Id.* The court held aggravated assault was a lesser-included offense of aggravated kidnapping because *as charged*, aggravated assault was "established by proof of the same or less than all the facts required to establish the commission of" aggravated kidnapping. *Id.* at 319 (emphasis added). Here, however, aggravated kidnapping was based on the allegation that Verastegui abducted Longo by restricting his movements, moving him from one place to another, and by secreting or holding him—not by threat of imminent bodily injury, conduct required to prove aggravated assault by threat. Accordingly, *Girdy* does not compel us to find a double jeopardy violation under *Blockburger* in this case.

2. Legislative Intent

Turning to the *Ervin* factors, we must also determine whether the offenses at issue share a common focus or gravamen. *See Garfias*, 424 S.W.3d at 59. The gravamen of kidnapping is the act of abduction. *Schweinle v. State*, 915 S.W.2d 17, 19 n.2 (Tex. Crim. App. 1996). Kidnapping is a result-oriented offense because the ultimate focus is the abduction of the victim, not how the

defendant restrains or interferes with the victim's liberty.[1]  *Gonzales*, 270 S.W.3d at 288.  The offense is legally completed when at any time during the restraint, the defendant forms the intent to prevent the victim's liberation by secreting or holding the victim in a place he is unlikely to be found.  *Laster*, 275 S.W.3d at 521.  On the other hand, the gravamen of aggravated assault by threat is the conduct itself, not the result, and therefore it is a nature-of-conduct crime as opposed to a result-oriented crime.  *Garfias*, 424 S.W.3d at 60.  There is an obvious distinction between the gravamen of each offense — the aggravated kidnapping charge and conviction focused on the abduction, i.e., the actual harm inflicted, while the aggravated assault by threat charge and conviction focused on Verastegui's threatening conduct.  *Cf. Garfias*, 424 S.W.3d at 60.  Accordingly, the gravamina of the two offenses indicates the Legislature intended to allow separate punishments for aggravated kidnapping and aggravated assault by threat.  *See id.*

The other *Ervin* factors also support this conclusion.  First, aggravated kidnapping and aggravated assault by threat are not contained in the same statutory section.  *Compare* TEX. PENAL CODE § 20.04(b) (Chapter 20, Penal Code, Kidnapping, Unlawful Restraint, and Smuggling of Persons), *with id.* §§ 22.01(a)(2), 22.02(a)(2) (Chapter 22, Penal Code, Assaultive Offenses).  Second, the offenses are neither phrased in the alternative nor similarly named.  *Compare* TEX. PENAL CODE § 20.04(b), *with id.* §§ 22.01(a)(2), 22.02(a)(2).  And third, although the trial court sentenced Verastegui to forty-five years' confinement for each offense, the offenses do not have identical punishment ranges — aggravated kidnapping in this case is a first degree felony, which carries a punishment range of confinement "for life or for any term of not more than 99 years or less than five years" and a fine not to exceed $10,000.00, but aggravated assault by threat is a

---

[1] By extension, aggravated kidnapping is also a result-oriented offense. *Gonzales v. State*, 270 S.W.2d 282, 288 (Tex. App.—Amarillo 2008, pet. ref'd).  Kidnapping, as applicable here, became an aggravated offense by use or exhibition of a deadly weapon during the commission of the offense.  *See* TEX. PENAL CODE ANN. § 22.04(b).

second degree felony, which carries a punishment range of confinement "for any term of not more than 20 years or less than 2 years" and a fine not to exceed $10,000.00. *Compare* TEX. PENAL CODE ANN. § 12.32, *with id.* § 12.33. Finally, when as here, the Legislature has not provided an express statement defining the allowable unit of prosecution, the gravamen of the offense best describes the allowable unit of prosecution. *See Garfias*, 424 S.W.3d at 61. As discussed above, the gravamina of Verastegui's convictions for aggravated kidnapping and aggravated assault differ. Therefore, the allowable units of prosecution are not the same. *See id.*

### *Conclusion*

Having reviewed the *Blockburger* test and the *Ervin* factors, we hold the undisputed facts do not show the double jeopardy violation is clearly apparent on the face of the record. Accordingly, Verastegui's double jeopardy complaint is overruled.

### *Instruction on Defense of a Third Person*

Finally, Verastegui argues the trial court erred by denying his request for a jury instruction on defense of a third person. Verastegui contends there was evidence to show he reasonably believed striking Longo with a beer bottle was immediately necessary to protect Enriquez.

### *Standard of Review*

In reviewing claims of charge error, we first ask whether there was error in the charge. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). The decision to exclude a defensive issue from the charge is reviewed for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). When reviewing a trial court's decision to refuse a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

*Applicable Law*

Generally, a trial court must instruct the jury, when properly requested, on statutory defenses, affirmative defenses, and justifications raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). However, even if the evidence viewed in the proper light raises a "prima-facie defense, no error is shown in the denial of a defensive instruction if the evidence establishes as a matter of law that the defendant is not entitled to rely on this defense." *Davis v. State*, 276 S.W.3d 491, 499 (Tex. App.—Waco 2008, pet. ref'd ) (quoting *Johnson v. State*, 157 S.W.3d 48, 50 (Tex. App.—Waco 2004, no pet.)); *see Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

Section 9.33 of the Texas Penal Code provides that a person is justified in using force against another to protect a third person if he would be be justified under Section 9.31 and he reasonably believes his intervention is immediately necessary to protect the third person. TEX. PENAL CODE ANN. § 9.33. Under Section 9.31, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself. *Id.* § 9.31(a). However, the use of force against another is not justified if a person provokes the other's use of force unless the person abandons the encounter and the other person continues to use force. *Id.* § 9.31(b)(4).

*Application*

Contrary to Verastegui's argument, the evidence shows Verastegui assisted rather than protected Enriquez when he struck Longo on the head with a beer bottle. Longo testified that during the struggle, he tried to resist the force Enriquez was exerting and escape. He further testified that during this struggle, Verastegui held him down and helped Enriquez by striking him on the head with a beer bottle. To the extent Verastegui argues his use of force was justified because he abandoned his encounter with Longo, the evidence shows Longo did not continue to

use force against Enriquez or Verastegui when he tried to escape. *See* TEX. PENAL CODE § 9.31(b)(4); *Davis*, 276 S.W.3d at 499. Despite that fact, Verastegui continued. Accordingly, Verastegui was not entitled to rely on defense of a third person as a matter of law. *See Davis*, 276 S.W.3d at 499. The trial court did not err in denying his request for the instruction. *See id.*

## CONCLUSION

We hold: (1) the evidence is sufficient to support Verastegui's conviction for aggravated kidnapping; (2) no double jeopardy violation is clearly apparent from the face of the record; and (3) Verastegui was not entitled to rely upon defense of a third person. We therefore overrule his issues and affirm the trial court's judgment.

Beth Watkins, Justice

Do Not Publish