

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LOUIS PHILLIP REYES, | § | No. 08-24-00098-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 368th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Williamson County, Texas |
| | § | |
| Appellee. | | (TC# 21-0470-K368) |
| | § | |
| | § | |

### MEMORANDUM OPINION[1]

Appellant Louis Phillip Reyes appeals his conviction for unlawful possession of a firearm. Finding no error, we affirm.

## I. FACTUAL BACKGROUND

In March 2021, Christian Ray was at a red light and when the light turned green, the car in front of him did not move. After three or four minutes, Ray pulled around him and honked his horn. The other driver pointed a gun at Ray. Ray testified at trial that the gun was a Glock with an

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

extra magazine attached by blue tape or rubber bands. Ray said that there was no one else in the vehicle and that there was a box on either the passenger seat or floorboard. Ray immediately called 911 to report the threat and followed the driver, providing the license plate number, make, model, and color of the vehicle and a general description of the driver. When the vehicle turned into an apartment complex, Ray saw it drive towards the apartment buildings and then turn around. A gate partially obstructed Ray's view and he testified at trial that he may not have been able to see if anyone got out of or into the vehicle. Police officers arrived at that point and stopped the vehicle before it could leave the apartment complex. At the time of the stop, Reyes was driving the vehicle. The officers remained in contact with Ray who gave them additional details about the driver that threatened him which matched Reyes's appearance: black male with short braids and tattoos.

The police stop was recorded by the officer's body camera and admitted into evidence at trial. Reyes told the officer that his friend, Versace, had been driving the car but had just left. Reyes was unable to tell the police Versace's last name or how he left without the car he had allegedly been driving. Reyes's girlfriend was in the passenger seat and the video shows one of the officers at the scene explaining that the girlfriend told him that Reyes had just arrived at the apartments to pick her up.

The police then detained Reyes and conducted a search of the vehicle. They found a safe on the passenger side floorboard and pried it open. Inside the safe was a gun that matched the description Ray had given them: it had an extended magazine, and a blue rubber band wrapped around the grip. Law enforcement did not check the firearm for fingerprints.

Because Reyes had a prior conviction in June 2019 for the felony offense of theft of a firearm, he was indicted for felony possession of a firearm. At trial[2], in addition to testimony from Ray and law enforcement officers, the State also offered into evidence a photograph that Reyes posted on Instagram ten days before the arrest that showed him with six guns, including one that had the same distinctive characteristics as the gun found in the safe. The trial court admitted the Instagram post photograph into evidence over Reyes's objection.

Reyes was convicted of illegally possessing a firearm. The jury also found true enhancement allegations that Reyes had two prior felony convictions and sentenced him to 45 years. In this appeal, Reyes challenges the legal sufficiency of the evidence and the admission of the of the Instagram post into evidence.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of review

It is "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) *(*quoting *Jackson v. Virginia*, 443 U.S. 307, 319, (1979)). To that end, in a legal sufficiency review "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a

---

[2] Reyes was present for jury selection but did not appear the next day for the guilt/innocence stage of his trial. His attorney informed the court that while Reyes said he had a flat tire, he did not believe him because Reyes had posted on Facebook the evening before, asking people if they would flee if they were facing 25 to 99 years. The trial court recessed until noon. When Reyes did not appear by that time, his attorney moved for a mistrial, which the trial court denied, and trial proceeded in his absence. Tex. Code Crim. Pro. Ann. art. 33.03 ("[W]hen the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.).

reasonable doubt." *Id*. We do not differentiate between circumstantial and direct evidence; both can be probative and either can be sufficient to establish guilt. *Id.*

### B. Possession

To establish the offense of unlawful possession of a firearm, the State must prove that the defendant was previously convicted of a felony and possessed a firearm within five years of his release from incarceration or supervision, whichever is later. Tex. Penal Code Ann. § 46.04(a)(1). Reyes does not dispute that he was previously convicted of a felony within the relevant time period. He challenges only the sufficiency of the evidence to prove possession.

To show possession, the State must show that Reyes had "actual care, custody, control, or management" of the firearm. Tex. Pen. Code Ann. § 1.07(a)(39). The State must also show that the defendant's possession was voluntary by showing that he "knowingly obtain[ed] or receive[d]" the firearm or was "aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* at § 6.01(b). Mere proximity to contraband is not sufficient to show that a defendant voluntarily possessed it. *Mirelez v. State*, No. 03-22-00536-CR, 2024 WL 3187651, at *4 (Tex. App.—Austin June 27, 2024, no pet.) (mem. op., not designated for publication). If the firearm is not found on the defendant's person or in his exclusive control, then there must be evidence of affirmative links between the defendant and the firearm. *Id*. Courts consider the following factors in evaluating whether there are affirmative links:

> whether the firearm was in plain view, whether appellant owned the residence where the firearm was found, whether he was in close proximity to the firearm and had ready access to it or whether it was found on him, whether he attempted to flee, whether his conduct indicated a consciousness of guilt, whether he had a special connection to the firearm, whether the firearm was found in an enclosed space, and whether he made incriminating statements.

4

*Id.* at \*5 (quoting *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd); *McBeth v. State*, No. 03-22-00026-CR, 2022 WL 3638208, at \*2–3 (Tex. App.—Austin Aug. 24, 2022, no pet.) (mem. op., not designated for publication).

### C. Analysis

In this case, the only factors from the above list for which there was evidence were that the firearm was in close proximity to Reyes and was found in an enclosed space. Reyes cites *Harris v. State*, in which the court held that evidence of these two factors was insufficient by themselves to prove possession. *Harris v. State*, 532 S.W.3d 524, 534 (Tex. App.—San Antonio 2017, no pet.). The factors, however, are not exclusive and the absence of any of the listed factors "is not evidence of appellant's innocence to be weighed against evidence tending to connect appellant to the [contraband]." *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976).

Here, unlike in *Harris*, there was other evidence that linked Reyes to the firearm. The vehicle that Reyes was driving when he was stopped was the same vehicle (verified by the license plate) that Ray reported. Reyes matched Ray's description of the person who pointed a gun at him. Reyes's girlfriend told the officer that Reyes had just arrived at her apartment to pick her up, supporting the inference that he, and not someone named Versace, had been driving the vehicle previously. Finally, Reyes's recent Instagram post showed him with a firearm that had the unique characteristics as the one described by Ray and the one found in Reyes's vehicle.

Reyes argues the State failed to produce specific evidence that was necessary to prove possession. Specifically, Reyes argues the State did not use a photograph or video of Reyes to ask Ray whether Reyes was the person who pointed the gun at him. He argues that the State did not ask Ray for a more detailed description of the driver (like what *type* of braids he had). Nor—Reyes posits—was there evidence about who owned the car or the safe, whether there were fingerprints

5

on the safe or the firearm, whether the police investigated whether a person named Versace was in the area, or that Reyes made any furtive gestures or misled the officers. Also, Reyes questions why the State did not subpoena the passenger, Reyes's girlfriend, to testify. This is the type of evidence the State *could have* presented, but it was not *required* to:

> The State need only prove the defendant's guilt beyond a reasonable doubt. The State has a right to prove its case in any way it may see fit under proper rules and regulations, and a defendant cannot direct either the method or manner of proof. Thus, the State cannot be forced to introduce any particular evidence in making proof of its case.

*Shelvin v. State*, 884 S.W.2d 874, 877 (Tex. App.—Austin 1994, pet. ref'd) (cleaned up).

Finally, Reyes argues that the State's evidence failed to counter his theory that, once at the apartment complex, and when Ray's view was obstructed, the original driver got out of the car and Reyes and his girlfriend got into the car. Reyes also argues that the State "failed to rule out the possibility that the passenger brought the safe into the vehicle." The State, however, is not required to "disprove every innocent explanation of the evidence before a jury can find a defendant guilty." *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016).

A rational juror could find based on the evidence at trial that Reyes possessed the firearm that was found in the vehicle he was driving. We overrule Reyes's first issue.

## III. ADMISSIBILITY OF EVIDENCE

### A. Standard of review

In his second issue, Reyes challenges the admissibility of the Instagram post that shows him posing with six firearms, one matching the firearm found in the vehicle. Reyes objected that the photograph was more prejudicial than probative because it portrays him "as a person who is

habitually in possession of a firearm[.]"[3] We review the trial court's admission of evidence under an abuse of discretion standard. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

### B. Texas Rule of Evidence 403

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. We presume that relevant evidence is more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (en banc); *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). In reviewing the trial court's ruling, we balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). When conducting the balancing test, these factors may blend together. *Id*. at 642.

### C. Analysis

*Probative Value*. The probative value of evidence is "how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation." *Id*. at 641. The contested issue in this case was whether Reyes voluntarily possessed the firearm or was only unknowingly in proximity to it. The post, showing Reyes with a gun that matched the one found in the vehicle,

---

[3] Reyes also argued to the trial court that the photograph was evidence of an extraneous crime (i.e., separate offenses of unlawful possession of a firearm). But, when asked by the trial court, he clarified that he was objecting only on Rule 403 grounds, not Rule 404 (evidence of other crimes).

was strong, probative evidence linking Reyes to the firearm. *Majors v. State*, 554 S.W.3d 802, 808–09 (Tex. App.—Waco 2018, no pet.) (holding that video of defendant stating he was going to buy guns was admissible under Rule 403 because it was evidence that the defendant possessed a firearm). Reyes concedes that the photograph was probative because it "surely makes it likely that [Reyes] possessed the gun on the day of the incident."

*Need for the evidence* Reyes argues that the State did not need this evidence because it could have used other evidence instead; specifically, it could have asked Ray if the gun (which was entered into evidence) was the same one that that he was threatened with, or the State could have subpoenaed the vehicle passenger to question her about Reyes's possession. As explained above, it is the State's prerogative whether to call certain witnesses or introduce certain evidence. Allowing the jury to compare the actual gun with the gun in the photograph was proper evidence and it was the State's choice to present that evidence instead of asking Ray to compare his memory of the gun he was threatened with three years earlier and the gun in evidence.

*Tendency that the evidence will suggest a decision on an improper basis, distract or confuse the jury, or be given undue weight.* The photograph shows that at one point Reyes possessed as many as six guns. Although this could be evidence of other incidences of unlawful possession, that evidence is not likely to distract or confuse the jury because "the circumstances of the extraneous offense were no more heinous than the charged offense." *Stone v. State*, 635 S.W.3d 763, 773 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) Furthermore, the State focused only on the characteristics of the gun that matched the one found on the day he was arrested and not the fact that Reyes was pictured with numerous firearms. Reyes argues that the evidence was given undue weight because there was no evidence of when the photograph was taken, only when it was posted. He also argues that the post does not prove that he *owned* the firearm, or that the firearms

8

were even real. These are arguments that Reyes was entitled to make to the jury, but they do not make the evidence more prejudicial than probative. Even if the photograph was taken years ago and the firearm was owned by someone else, it is still evidence tending to prove that Reyes had possession of a firearm identical to the one found in the vehicle he was driving and the one Ray described. Finally, the jury was given a limiting instruction that evidence of other crimes was "not admissible to prove the character of [Reyes] in order to show action in conformity with that character, as proof he is guilty of the offenses charged in the indictment[]." "On appeal, we generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

*Amount of time.* The sponsoring witness for the Instagram post was the arresting officer. The State's questioning about the photograph takes up about two pages of the reporter's record. The State did not spend an inordinate amount of time presenting the evidence.

We hold that the trial court did not abuse its discretion in finding that any prejudicial effect of the photograph does not outweigh its probative value. We overrule Reyes's second issue.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

August 12, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

9